Laird Wilcox and Maud Wilcox (husband and wife) v. Commissioner.
Wilcox v. Commissioner
Docket No. 3743.
United States Tax Court
1944 Tax Ct. Memo LEXIS 133; 3 T.C.M. (CCH) 881; T.C.M. (RIA) 44281; August 21, 1944
*133 Edward F. Lunsford, Esq., and Bertram M. Goldwater, Esq., for the petitioners. T. M. Mather, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: By this proceeding petitioners seek a redetermination of a deficiency in the sum of $2,978.09 for the year 1941. The sole question for our determination is whether a sum embezzled by Laird Wilcox constitutes taxable income. A small adjustment in income from salary is conceded by petitioners. All of the facts are stipulated and are hereby found accordingly. [The Facts] Laird Wilcox, hereinafter referred to as petitioner, entered the employ of Nevada Transfer and Warehouse Company in December of 1937 in the capacity of bookkeeper and continued in its employment until 1942. During the last few years of his employment he was receiving a salary of $200 per month, payable semi-monthly. It was not the custom of his employer to allow him to draw his salary in advance. Petitioner drew and was paid his salary promptly as and when due. In June of 1942, at the time petitioner's books were audited, his employer for the first time discovered that petitioner had converted to his own use between June of 1941, and up to and including *134 June 20, 1942, a total sum of $22,896.01, of which sum $12,748.60 was taken by petitioner between and including June of 1941, and December 31, 1941. This is the sum here in controversy. At no time during this period was petitioner's employer indebted to him for other than salary which was currently paid. The $12,748.60 was composed of miscellaneous sums of money belonging to petitioner's employer and received and collected by petitioner at different times in his capacity as bookkeeper. Petitioner failed to deposit the moneys to the credit of his employer and made false and fictitious entries in the accounts of his employer in order to prevent discovery. Petitioner, in some circumstances pocketed and withdrew payments in cash made to him by customers and failed to credit the customers' accounts or the employer's accounts receivable with the sums. The moneys were secretly and nefariously withheld by petitioner without the knowledge or consent of his employer. Petitioner gambled and lost practically all the money withheld by him in various gambling houses in Reno, Nevada. A criminal complaint charging petitioner with embezzlement on the basis of the foregoing was filed on July 17, *135 1942, when petitioner was arrested. He was thereafter arraigned and waived preliminary examination on July 20, 1942. An information was filed against him in the Second Judicial District Court of Nevada on July 20, 1942, charging him with embezzlement. On the same day petitioner was arraigned and entered a plea of guilty as charged. He was sentenced to not less than two nor more than fourteen years imprisonment. He served this sentence until parolled about the middle of December of 1943. The taking of the money as above set out has never been condoned or forgiven by the employer which always has and does now hold petitioner liable to restore it. The present facts are indistinguishable from , and in our view the result that embezzled moneys constitute income taxable to the embezzler must equally apply here. True, that case was reversed on appeal by the , sub nom, McKnight, Administrator v. Commissioner. But in the meantime, two similar decisions of the Board of Tax Appeals had been affirmed. In , *136 the Eighth Circuit affirmed a memorandum opinion holding the proceeds of embezzlements taxable; and in , (certiorari denied ), the Seventh Circuit affirmed the Board's decision, , in which it was held that ransom money obtained by a kidnapper, and to which his title was no better than to embezzled funds, "constitutes income under section 22 (a) of the Revenue Act of 1928." (page 880). In some respects the present proceeding may be slightly more favorable to respondent's position than McKnight, Administrator v. Commissioner, supra. There the Court pointed out that "the Board * * * finds that the gain arose on his [ the embezzler's] using the funds for his own purposes, whatever they were. The time of using, and not the time of taking, then would determine the incidence of the tax, and about that nothing is known;" [italics added] whereas, here it is stipulated that petitioner gambled and lost "practically all" the money withheld by him, and if the losses were not contemporaneous with the takings, petitioner certainly *137 had the burden of proof. Again, it is granted in the McKnight opinion that "It may be true that one who grows rich by systematic pilferings in his business which cannot be traced and recovered may realize taxable gain * * *". Here, the size and circumstances of the thefts made discovery probable, and in fact it eventually occurred. But as of the end of the taxable year before us the embezzlements had not yet been unearthed, so that if the situation as it existed at the end of the taxpayer's annual accounting period is controlling, the facts would not warrant the conclusion that he would certainly be called upon to make restitution. Cf. . The difficulties of employing such a criterion as the test of taxability need not be explored at length, for it is only fair to concede that basically the McKnight case is inconsistent with the present result. Because the weight of authority is the other way, because our own decisions have consistently held such receipts to be taxable income, and because, due to the conflict among the Circuits, and the lack of any controlling word from the Supreme Court, *138 any conclusion we might reach would be irreconcilable with some authority, we feel compelled, with deference, to depart from the doctrine of that case. On the authority of Estate of Thomas Spruance, Kurrle v. Helvering, and Humphreys v. Commissioner. Decision will be entered for the respondent.